## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Karl Hanson, | Civ. No. 10-3895 (JRT/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charmane Domino; Jeremiah Jessen; Chris Erickson, in his individual capacity; and John Doe, and Mary Roe 1 through 4; | |
| Defendants. | |

---

Nathan M. Hansen, Esq., Hansen Law Office, counsel for Plaintiff.

Daniel P. Kurtz, Esq., Everett & VanderWiel PLLP, counsel for Defendants Charmane Domino and Jeremiah Jessen.

Marsha Eldot Devine, Esq., Minnesota Attorney General's Office, counsel for Defendant Chris Erickson.

---

## I.    INTRODUCTION

This matter is before United States Magistrate Judge Tony N. Leung on the Motion for Summary Judgment of Defendant Chris Erickson (Doc. No. 54), and the Motion for Summary Judgment by Defendants Charmane Domino and Jeremiah Jessen (Doc. No. 58). This action has been referred to the magistrate judge for a Report and Recommendation to the District Court under 28 U.S.C. § 636 and Local Rule 72.2(b). On September 14, 2012, the Court held a hearing on Defendants' motions.

Based on the record, memoranda, and oral arguments, **IT IS HEREBY RECOMMENDED** that: (1) Defendant Chris Erickson's Motion for Summary Judgment

(Doc. No. 54) be **GRANTED**; (2) Defendants Charmane Domino and Jeremiah Jessen's Motion for Summary Judgment (Doc. No. 58) be **GRANTED**; and (3) this action be **DISMISSED WITH PREJUDICE**.

## II.     BACKGROUND

Plaintiff Karl Hanson asserts that his Fourth Amendment rights were violated during a September 12, 2009 traffic stop and its aftermath. (Doc. No. 42, First Am. Compl., Counts I & II.) He also claims that Defendants committed several torts under Minnesota law by their actions during and after his arrest. (*Id.*, Counts III–V.) Plaintiff generally alleges that although he had not consumed any alcohol or other intoxicating substance on September 12, 2009, Defendants falsely arrested him for driving while impaired. Plaintiff brings his Fourth Amendment claims under 42 U.S.C. § 1983, and the Court has supplemental jurisdiction over his state law claims for false imprisonment, assault and battery, and defamation under 28 U.S.C. § 1367. Defendants seek summary judgment on all of Plaintiff's claims.

### *Traffic Stop*

At approximately 8:20 p.m. on September 12, 2009, Defendant Charmane Domino, a City of Medina police officer, stopped Plaintiff's vehicle for speeding. (Doc. No. 61, Aff. of Daniel P. Kurtz ("Kurtz Aff.") ¶ 4, Ex. C, Dep. of Charmane Domino ("Domino Dep.") 58:2–58:12; *Id.* ¶ 5, Ex. D at 5 (describing basis for stop as Plaintiff's speeding at 62 mph in a 40 mph zone).) Plaintiff does not dispute that he was speeding. (Doc. No. 65, Pl.'s Mem. of Law in Opp'n to Defs.' Mots. for Summ. J. ("Pl.'s Mem.") 3 ("It is undisputed . . . that Officer Domino pulled the Plaintiff over for speeding.").)

When Officer Domino approached Plaintiff's vehicle and asked Plaintiff for his driver's license, Plaintiff fidgeted through several compartments and clothing within the vehicle and refused to make eye contact with her. (Kurz Aff. ¶ 5, Ex. D ta 5.) Officer Domino also observed that Plaintiff faced away from her when he spoke to her and that he did not answer all her questions. (*Id.*; Domino Dep. 65:25–66:19.) Plaintiff did not answer when Officer Domino asked him how many drinks he had that day; instead, he told her that he believed she was asking him a "leading question." (Kurz Aff. ¶ 5, Ex. D at 6; Domino Dep. 68:19–23.) Plaintiff, who is a lawyer by profession, described Officer Domino's manner of questioning him as "snotty" and explained that he believed her questions about the number of drinks he had were improper. (Doc. No. 66, Aff. of Karl Hanson ("Pl.'s Aff.") ¶ 2 (concerning Plaintiff's profession); Doc. No. 61, Kurz Aff. ¶ 3, Ex. B, Dep. of Karl Hanson ("Pl. Dep.") 22:5–6, 23:12–22.) Officer Domino also testified that she observed Plaintiff's behavior to be strange and uncooperative, and he was unable to multitask.

Based on her observations and the circumstances, Officer Domino suspected that Plaintiff had been operating the car under the influence of alcohol or some other substance. (Domino Dep. 65:15–19.) At that time, Officer Domino believed that she should conduct field sobriety tests to evaluate her suspicion. (*Id.* at 60:10–25.) Officer Domino contacted Defendant Jeremiah Jessen, another Medina Police Officer (*Id.* at 69:12–23; Kurz Aff. ¶ 5, Ex. D at 2, 6), and he arrived at the scene approximately seven minutes after Officer Domino had stopped Plaintiff's car. (Doc. No. 66, Pl. Aff. ¶ 4; Kurz Aff. ¶ 2, Ex. A, DVD Video of Traffic Stop ("Traffic Stop Video") 20:27:52.)

Officer Jessen had a conversation with Officer Domino about her suspicions that Plaintiff had been driving while impaired and the reasons that she wanted to do field sobriety testing on Plaintiff. (Kurz Aff. ¶ 5, Ex. D at 6; Pl. Aff. ¶ 4; Domino Dep. 71:15–21.) Officer Jessen then approached Plaintiff's vehicle and spent a little over thirty seconds at Plaintiff's door. (Traffic Stop Video 20:27:52–20:28:30; Pl. Aff. ¶ 4.) While at the door, Officer Jessen also observed that Plaintiff would not look at him or speak directly to him in response to his questions. (Kurz Aff. ¶ 5, Ex. D at 2.) According to Officer Jessen, when he asked Plaintiff how much he had had to drink that day, Plaintiff did not answer directly, instead claiming that Jessen had asked an improper leading question. (Kurz Aff. ¶ 6, Ex. E, Dep. of Jeremiah Jessen ("Jessen Dep.") 33:2–34:1.) Plaintiff testified, on the other hand, that Officer Jessen did not ask him whether he had anything to drink. (Kurz Aff. ¶ 3, Ex. B, Dep. of Karl Hanson ("Pl. Dep.") 31:13–16.) Officer Jessen then asked Plaintiff to exit the vehicle. (Pl. Aff. ¶ 4.) Initially Plaintiff did not get out of the car, but asked Officer Jessen why he was being asked to exit the vehicle. (*Id.*) Officer Jessen repeated the question several times, and then ordered Plaintiff to exit the vehicle, and Plaintiff eventually complied. (*Id.*; Jessen Dep. 68:8–20.)

When Plaintiff exited the vehicle, Officer Jessen saw that Plaintiff's eyes were constricted, red, and watery. (Kurz Aff. ¶ 5, Ex. D at 2.) But Officer Jessen could not smell alcohol on Plaintiff's breath. (*Id.*) Officer Jessen informed Plaintiff that he wanted to conduct field sobriety tests. (*Id.*; Jessen Dep. 71:20–23.) Plaintiff refused. When Plaintiff refused, Officer Jessen informed Plaintiff "that he was under arrest for DWI due to his non-compliance and [Jessen's] suspicion that he was under the influence of a

controlled substance," and Officer Jessen placed Plaintiff in handcuffs. (Kurz Aff. ¶ 5, Ex. D at 2; Jessen Dep. 74:23–75:6; Traffic Stop Video 20:30:38.) Plaintiff then agreed to standardized field sobriety testing, so Officer Jessen removed his handcuffs and administered several different tests. (Traffic Stop Video 20:31:25–20:36:00; Kurz Aff. ¶ 5, Ex. D at 2–3.)

Officer Jessen observed multiple indicia of impairment while administering Plaintiff a horizontal-gaze-nystagmus test, a walk-and-turn test, and a one-legged-stand test. (Kurz Aff. ¶ 5, Ex. D at 2–3.) Plaintiff also performed poorly during the field sobriety tests used to evaluate his ability to divide his attention between simple mental and physical exercises, including, at one point, reaching out to catch his balance on the rear driver's side of his vehicle. (Traffic Stop Video 20:33:27, 20:34:50; Kurz Aff. ¶ 5, Ex. D at 3; *see also* Kurz Aff. ¶ 7, Ex. F (explaining the purpose of "divided attention" tests).) Officer Jessen also had Plaintiff open his mouth and stick out his tongue, which Plaintiff did. (Kurz Aff. ¶ 5, Ex. D at 3; *see also* Jessen Dep. 81:6–82:20; Doc. No. 66, Pl. Aff. ¶ 6.) Officer Jessen testified that he saw "hot spots" on the back of Plaintiff's tongue, marks that can be caused from the use of certain illegal drugs. (Kurz Aff. ¶ 5, Ex. D at 3; Jessen Dep. 81:6–82:20 (discussing what Officer Jessen observed when looking at Plaintiff's tongue).) After concluding the field sobriety tests and looking inside Plaintiff's mouth, Officer Jessen placed Plaintiff under arrest for driving under the influence, handcuffed him, and placed him in the back of his squad car. (Jessen Dep. 83:11–22; Traffic Stop Video 20:36:00; Pl. Aff. ¶ 5.)

Plaintiff testifies that he had not consumed any alcohol or taken any legal or illegal drugs that day. (Pl. Aff. ¶ 3.) He confirms that Officer Jessen spent about thirty seconds at his car door after arriving on the scene, and after Plaintiff informed him that he was on his way to get a tire, Officer Jessen asked him to step out of the vehicle. (*Id.* ¶ 4.) According to Plaintiff, when Officer Jessen ordered Plaintiff to step out of the vehicle, Jessen began screaming and yelling at him "like a drill sergeant," ordering Plaintiff to stick out his tongue. (*Id.* ¶ 5.) Plaintiff testifies that after he complied with Officer Jessen's directive to stick out his tongue, he was placed under arrest, and "to avoid a false DUI refusal charge," Plaintiff agreed to further field sobriety testing. (*Id.*) Plaintiff denies that there were any "hot spots" on his tongue, and he asserts that after he was released from jail on the morning of September 13, 2009, his wife took pictures of his tongue confirming that no "hot spots" were present. (*Id.* ¶ 7.)

### *Plaintiff's Arrest and Arrival at the Medina Police Station*

When Officer Jessen handcuffed Plaintiff, he double locked the handcuffs, and "gap checked them for space." (Jessen Dep. 83:20–22.) After Officer Jessen placed Plaintiff in the back of his squad car, he sent out a request to have a drug recognition expert meet him at the Medina Police Department Headquarters to conduct a drug recognition evaluation ("DRE") on Plaintiff. (*See* Jessen Dep. 85:13–25.) Officer Jessen kept Plaintiff handcuffed in his squad car while he drove to the Medina Police Station. (Kurz Aff. ¶ 3, Ex. B, Pl. Dep. 62:17–20.)

At the Medina Police Station, Officer Jessen read Plaintiff Minnesota's Motor Vehicle Implied Consent Advisory and asked Plaintiff whether he wished to consult an

attorney.  (Kurz Aff. ¶ 9, Ex. H, DVD In-House Video at Medina Police Station ("Police Station Video") 5:25–6:50.)  Plaintiff asked Officer Jessen if he could read the form himself, and Officer Jessen declined, but read the form to Plaintiff again.  (*Id.* at 6:51–8:20.)  Officer Jessen also read Plaintiff a *Miranda* warning.  (Kurz Aff., ¶ 5, Ex. D at 3.)  Plaintiff then said that he understood the advisory and that he did not wish to consult an attorney.  (Police Station Video 8:21–28.)  Officer Jessen asked Plaintiff to provide a urine sample as provided in the Minnesota's Implied Consent Law, *see* Minn. Stat. § 169A.51, subd. 1(a).  Plaintiff agreed to the urine test, but he was ultimately not able to provide a urine sample that evening.  (*Id.* at 8:39; Kurz Aff. ¶ 5, Ex. D at 3.)

### *Defendant Erickson's Drug Recognition Evaluation*

Later that night, Defendant Chris Erickson, a Minnesota State Patrol Trooper trained to conduct DREs, responded to the message Officer Jessen had sent earlier in the evening asking someone to conduct a DRE on Plaintiff at the Medina Police Station. (Doc. No. 57, Aff. of Marsha Eldot Devine ("Devine Aff.) ¶ 7, Ex. E, Dep. of Chris Erickson ("Erickson Dep.") 26:21–27:4.)  When Trooper Erickson arrived at the station, Officer Jessen had already placed Plaintiff in his squad car to take him to a hospital to have his blood drawn.  (Jessen Dep. 90:4–91:1.)  When Officer Jessen learned that Trooper Erickson was nearby, however, Officer Jessen brought Plaintiff back into the station so that Trooper Erickson could conduct the DRE.  (*Id.*)

Trooper Erickson first ruled out alcohol use in the DRE by having Plaintiff blow into a machine called an "Alco-Sensor."  (Erickson Dep. 29:11–18.)  That device read Plaintiff's blood alcohol content to be .000.  (*Id.*)  Trooper Erickson then asked Plaintiff

7

several preliminary questions, performed eye examinations, conducted divided attention tests, checked Plaintiff's vital signs, conducted "darkroom examinations," and asked some "wrap up" questions. (*Id.* at 29:19–24.) While conducting the DRE, Trooper Erickson states that he wrote his observations and findings on a DRE Face Sheet/Drug Influence Evaluation form he was carrying on a clipboard. (*Id.* at 77:5–11; *id.*, Erickson Dep. Ex. 3 at 2; Pl. Dep. 124:1–4 (Plaintiff admitting that he saw Erickson taking notes during the DRE).) Later he wrote a narrative, supplemental report summarizing the observations and findings he recorded during the evaluation. (Erickson Dep., Ex. 3 at 1.) Trooper Erickson ultimately concluded that Plaintiff was under the influence of a central nervous system depressant and a stimulant based on his observations that: (1) Plaintiff showed signs of intoxication during the horizontal-gaze-nystagmus test; (2) Plaintiff had trouble performing the walk-and-turn test; and (3) Plaintiff struggled to accurately estimate time during the "Romberg" divided-attention test. (*Id.* at 1.) On the in-house video taken at the Medina Police Station that night, Plaintiff can be seen stumbling during a test having him walk heel-to-toe in a straight line, which Trooper Erickson' conducted as part of the DRE. (Police Station Video 1:17:16, 1:18:15.)

When Trooper Erickson completed the DRE, he and Officer Jessen held a conversation off camera and out of the reach of the Medina Police Station's recording equipment. (Erickson Dep. 160:9–16.) Trooper Erickson did not recall the conversation that he had with Officer Jessen. (*Id.* at 162:11–13.) Officer Jessen explained that during that conversation, Trooper Erickson informed him of the results of the DRE. (Jessen

Dep. 127:4–9.) Trooper Erickson explained that his usual practice following a DRE was to discuss his observations with the arresting officers. (Erickson Dep. 162:8–10.)

### *Plaintiff's Blood Test at Methodist Hospital*

After Trooper Erickson completed the DRE, Officer Jessen took Plaintiff to Methodist Hospital where a blood draw was conducted. (Kurz Aff. ¶ 5, Ex. D. at 4.) The Bureau of Criminal Apprehension ("BCA") Laboratory tested the blood sample and did not detect alcohol or other commonly used drugs in Plaintiff's system. (Kurz Aff. ¶ 14, Ex. M, Toxicology Report.) The BCA's tests can rule out only certain substances, but may not identify others that could be present in the test subject's body. (Kurz Aff. ¶ 15, Ex. N, Aff. of Lindsey Garfield ("Garfield Aff.") ¶¶ 7–9.)

### *Plaintiff's Expert Report*

During this litigation, Plaintiff had an expert report prepared by Joseph J. Stine,[1] the former Police Chief of New Britain Township in Pennsylvania from 1990 through 2000. (Hansen Aff. ¶ 4, Ex. 2.) In his report, Chief Stine states that he has reviewed materials in connection with this litigation and describes the background of the traffic stop and the events following Plaintiff's arrest. (*Id.* at 1–2.) Based on his review of the evidence, Chief Stine concludes that Officer Domino detained Plaintiff "without a reasonable suspicion that criminal activity was afoot" when she expanded the scope of the traffic stop beyond issuing a citation for speeding. (*Id.* at 5.) Chief Stine also opines that Officer Jessen did not follow accepted police practices when he asked Plaintiff to

---

[1] Stine's report is unsworn.

exit the vehicle because he did not observe certain "classic signs of intoxication" and thus did not have "[t]he prerequisite reasonable suspicion to conduct this investigatory detention[.]" (*Id.* at 7.) Chief Stine further concludes that Officer Jessen did not have probable cause to arrest Plaintiff for driving while impaired when he arrested Plaintiff. (*Id.* at 7–8.) Finally, Chief Stine asserts that Trooper Erickson's DRE must have been affected by a discussion he had with Officer Jessen after the DRE was completed because that conversation was not recorded. (*Id.* at 9.)

### The Weekly Medina Police Report Shared with the Media

The Medina Police Department issued a police report to certain news sources that included information regarding Plaintiff's arrest. (Kurz Aff. ¶ 13, Ex. L at Medina Defs. 0989.) That police report included Plaintiff's name, the date of his arrest, the fact that he was arrested for driving while impaired, and the location where the incident occurred. (*Id.*) Plaintiff testified that he did not know which newspaper may have published information about his arrest, but he recalled that he may have read about his arrest somewhere on the internet. (Pl. Dep. 170:14–171:16.)

## III. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a motion for summary judgment has been made and supported by the

pleadings and affidavits, the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### B. Plaintiff's False Arrest Claim Under 42 U.S.C. § 1983

#### 1. No reasonable trier of fact could conclude that Officer Domino violated Plaintiff's Fourth Amendment rights by stopping his vehicle for speeding

In Count I of the First Amended Complaint, Plaintiff claims that Defendants, acting under color of law, deprived him of his constitutional right under the Fourth Amendment to be free from unreasonable seizures in violation of 42 U.S.C. § 1983. To the extent he asserts that his Fourth Amendment rights were violated by Officer Domino's decision to stop his vehicle for speeding, Defendants are entitled to judgment as a matter of law. "[P]robable cause that a driver has committed any traffic violation, no matter how minor, provides sufficient justification under the Fourth Amendment to stop a vehicle." *Sherbrooke v. City of Pelican Rapids*, 513 F.3d 809, 813 (8th Cir. 2008) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Plaintiff does not dispute that Officer Domino had probable cause to pull him over for speeding. Accordingly, Defendants are entitled to judgment as a matter of law to the extent Plaintiff bases his § 1983 claim on the assertion that his Fourth Amendment rights were violated by Officer Domino's decision to stop his vehicle. *United States v. Sallis*, 507 F.3d 646, 650 (8th Cir. 2007) (concluding that because the criminal defendant did not dispute that she as speeding, there was probable cause for the traffic stop and any other motivation for the stop by the officer was irrelevant).

## 2. No reasonable trier of fact could conclude that Officer Domino's investigative detention of Plaintiff was an unreasonable seizure

Plaintiff next claims that his Fourth Amendment rights were violated when Officer Domino did not immediately give him a citation for speeding and send him on his way, but instead prolonged the traffic stop to further investigate whether Plaintiff was driving while impaired. After an officer finishes addressing a motorist's commission of a routine traffic offense during a traffic stop, the officer cannot continue to detain the motorist "unless the officer has a reasonable articulable suspicion for believing that criminal activity [is] afoot." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (quotations omitted). "Whether an officer has reasonable suspicion to expand the scope of a stop is determined by looking at the 'totality of the circumstances, in light of the officer's experience.'" *United States v. Morgan*, 270 F.3d 625, 631 (8th Cir. 2001) (quoting *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997)).

Here, the record shows that Plaintiff's behavior led Officer Domino to suspect that he might be driving while impaired. When Officer Domino interacted with Plaintiff, she observed that Plaintiff was unable to multitask. He could not answer her questions while he was looking within the vehicle through several compartments and clothing for his driver's license and insurance information. She also explained that Plaintiff refused to answer some of her questions and took a long time answering others. She observed that Plaintiff avoided eye contact and faced away from her when he did respond to her questions. Considering the totality of the circumstances, and taking the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Officer Domino

lacked reasonable articulable suspicion to conduct further investigation into whether Plaintiff was driving while impaired. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that his Fourth Amendment rights were violated by Officer Domino's expansion of the traffic stop.

Plaintiff argues that because Officer Domino did not smell alcohol on his breath when she pulled him over, there is a genuine dispute whether Officer Domino had reasonable articulable suspicion to detain him further. The fact that Officer Domino did not smell alcohol, however, does not negate the reasonableness of her suspicion that Plaintiff was driving while impaired; under Minnesota law, it is a crime to drive while impaired by substances other than alcohol. *See* Minn. Stat. § 169A.20, subd. 1(2)–(4) (making it a crime for any person to drive a motor vehicle under the influence of a controlled substance or a hazardous substance that affects the nervous system or other body systems so as to impair the person's ability to operate the vehicle). Moreover, the test for whether an investigatory detention was supported by reasonable articulable suspicion does not look at facts in isolation; rather, the test considers the totality of the circumstances. *See Morgan*, 270 F.3d at 631.

Plaintiff also argues that Chief Stine's expert report creates a genuine fact dispute whether Officer Domino had sufficient reasonable articulable suspicion to detain Plaintiff further. Chief Stine asserts that Officer Domino did not have reasonable articulable suspicion to detain Plaintiff because she did not smell alcohol, hear Plaintiff slur his speech, or observe Plaintiff exhibit certain other signs of intoxication. But Chief Stine offers an improper and inadmissible legal conclusion when he concludes that Officer

13

Domino lacked reasonable articulable suspicion to investigate whether Plaintiff had been driving while impaired. The Eighth Circuit has held that it is an abuse of discretion for a district court to allow an expert on "police policies and procedures" to testify on his views concerning the reasonableness of officers' conduct in light of "Fourth Amendment standards," such as reasonable suspicion and probable cause. *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995). Thus, Plaintiff's expert report cannot defeat summary judgment.[2]

For these reasons, Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 claim to the extent it is based on Officer Domino's decision to prolong the traffic stop to investigate whether Plaintiff was driving while impaired.

### 3. No reasonable trier of fact could conclude that Officer Jessen lacked reasonable articulable suspicion to subject Plaintiff to field sobriety tests

Plaintiff next claims that Officer Jessen violated his Fourth Amendment rights by ordering Plaintiff to step out of the vehicle and by conducting field sobriety tests. There was nothing improper about Officer Jessen ordering Plaintiff to step out of the vehicle

---

[2]     In addition, Plaintiff's expert's report provides an insufficient basis to conclude that Officer Domino lacked reasonable articulable suspicion because it is unsworn. An unsworn expert report that is neither accompanied by an affidavit adopting the opinions in the report or deposition testimony reaffirming those opinions cannot be used to defeat summary judgment. *See DG&G, Inc. v. FlexSol Packaging Copr. of Pompano Beach*, 576 F.3d 920, 826–27 (8th Cir. 2009) (noting that several circuits hold that unsworn expert reports are not admissible for summary judgment purposes, but that a party may be permitted to cure the failure to produce a sworn report by a subsequent affidavit); *Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F. Supp. 2d 886, 904 (D. Minn. 1999) (refusing to consider, for the purposes of a summary judgment motion, an unsworn and unverified expert report).

because "[t]he Fourth Amendment grants an officer conducting a routine traffic stop latitude to [among other things] ask the driver to step out of his vehicle and over to the patrol car[.]" *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.").

Moreover, no reasonable jury could conclude that Officer Jessen lacked reasonable articulable suspicion to conduct field sobriety tests. Officer Jessen observed similar indicia of impairment that led Officer Domino to suspect Plaintiff was driving while impaired. For example, Officer Jessen observed that Plaintiff avoided eye contact, had difficulty multi-tasking, and was uncooperative. Plaintiff does not present any evidence that would permit a reasonable trier of fact to conclude that Officer Jessen did not, in fact, observe these indicia of impairment. Again, Plaintiff's only argument is that Officer Jessen did not observe certain other indicia of impairment, but that argument cannot defeat summary judgment. When an officer observes sufficient indicia of impairment to develop a reasonable articulable suspicion that a motorist is driving while impaired, the absence of one or more other signs of impairment does not mean that an investigatory detention violates the Fourth Amendment. *See United States v. Rekonnen*, No. 07-123 (JNE/RLE), 2007 WL 2973840, at *15 (D. Minn. Oct. 9, 2007) (concluding that an officer had reasonable suspicion to conduct field sobriety tests despite the fact that he did not smell alcohol on the defendant and citing Minnesota cases concerning certain

indicia of impairment that justify investigation of driving while impaired under Minnesota law).

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that Officer Jessen violated § 1983 by requiring Plaintiff to exit the vehicle and by conducting field sobriety tests.

### 4. No reasonable trier of fact could conclude that Officer Jessen lacked probable cause to arrest Plaintiff

Plaintiff next claims that Officer Jessen violated his Fourth Amendment rights by arresting him without probable cause. To comply with the Fourth Amendment, a warrantless arrest must be supported by probable cause. *Smithson v. Aldrich*, 253 F.3d 1058, 1062 (8th Cir. 2000) ("In connection to a Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest [the suspect]."). Probable cause requires that "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense[.]" *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). "The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of circumstances." *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983).

Here, Officer Jessen testified that Plaintiff performed poorly on and demonstrated multiple indicia of impairment during his horizontal-gaze-nystagmus test, his walk-and-turn test, and his heel-to-toe walking test. Defendants have also pointed to evidence that Plaintiff had red, watery eyes, had trouble multi-tasking and concentrating, was

uncooperative, and demonstrated other indicia of impairment. Further, video evidence of the field sobriety tests Officer Jessen administered show Plaintiff having significant difficulty balancing during some of the tests, which further corroborates Officer Jessen's police report and deposition testimony.[3] Plaintiff has not submitted any evidence[4] that creates a genuine dispute about any of these facts, all of which are material to the issue of probable cause.[5] Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that Defendants violated § 1983 by arresting him for driving while impaired.

---

[3] In his deposition, Plaintiff testified that any trouble he had balancing during the field sobriety tests is explained by exhaustion he felt from water-skiing earlier in the day. But Officer Jessen was not required to conduct a mini-trial to exclude all other possibilities that might not support whether probable cause existed. *See Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (noting that an officer is not required to conduct a mini-trial before arrest, but that probable cause does not exist when a minimal further investigation would exonerate the suspect).

[4] Plaintiff contends that the negative results of his blood test create a genuine fact dispute concerning probable cause for his arrest, but those results are irrelevant to the probable cause issue. Probable cause is determined at the time of the arrest, not from facts that are learned after the arrest takes place. *Id.* ("As probable cause is determined at the moment the arrest was made, any later undeveloped facts are irrelevant to the probable cause analysis for an arrest.") (quotations omitted).

[5] Even if Officer Jessen was mistaken in his judgment that Plaintiff was impaired while operating his vehicle, which is the crux of Plaintiff's argument, this would not mean that Officer Jessen violated Plaintiff's Fourth Amendment rights by arresting him. Defendants would be entitled to qualified immunity on this summary judgment record because the undisputed facts show that he had *actual* probable cause to arrest Plaintiff, and *arguable* probable cause to arrest Plaintiff as a minimum. *Id.* (noting that an officer is entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause so long as the mistake is objectively reasonable, and referring to this as an inquiry whether the officer has "arguable probable cause").

**5.    No reasonable trier of fact could conclude that Trooper Erickson's conduct constituted an unlawful arrest of Plaintiff**

It is not clear whether or on what grounds Plaintiff asserts that Trooper Erickson's actions resulted in a Fourth Amendment false arrest claim. Defendants have presented evidence that Trooper Erickson never took over custody of Plaintiff, but instead simply continued the investigation of Plaintiff's suspected offense while Plaintiff was in the custody of the Medina Police. To the extent Plaintiff claims that Trooper Erickson violated his Fourth Amendment rights by conducting the DRE without probable cause, Trooper Erickson is entitled to summary judgment because Officer Jessen had probable cause to arrest Plaintiff. *See United States v. Briley*, 726 F.2d 1301, 1305 (8th Cir. 1984) ("Probable cause is based on the collective knowledge of all the officers involved."). Accordingly, Trooper Erickson is entitled to judgment as a matter of law on Plaintiff's claim that he violated § 1983 by conducting a DRE.

Thus, for all the reasons outlined above, Defendants' motions for summary judgment should be granted and Count I of Plaintiff's First Amended Complaint should be dismissed with prejudice.

**C.    Plaintiff's 42 U.S.C. § 1983 Conspiracy Claim**

Plaintiff also claims that Defendants conspired to violate his Fourth Amendment rights and subject him to a false arrest. To establish a § 1983 conspiracy claim, Plaintiff must show: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; (3) that the overt act injured the plaintiff," and (4) that the

plaintiff was actually deprived of a constitutional right. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). "Speculation and conjecture are not enough to prove that a conspiracy exist[ed]." *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999).

As discussed above, Plaintiff has failed to produce any evidence that would allow a reasonable jury to conclude Plaintiff was actually deprived of a constitutional right. The traffic stop was supported by probable cause that he was speeding. Officer Domino's decision to prolong the stop to further investigate the crime of driving while impaired was supported by reasonable articulable suspicion. Officer Jessen had a reasonable basis to order Plaintiff to step out of the vehicle and perform field sobriety tests. Officer Jessen had probable cause to arrest Plaintiff. And Officer Erickson committed no Fourth Amendment violation by conducting a DRE. Because no reasonable trier of fact could conclude that Plaintiff was actually deprived of a constitutional right, Defendants are entitled to judgment as a matter of law on his § 1983 conspiracy claim.

Defendants are also entitled to judgment as a matter of law on Plaintiff's conspiracy claim because there is no evidence from which a reasonable trier of fact could conclude that Defendants conspired with one another to unlawfully arrest Plaintiff. Plaintiff points to no evidence of any meeting of the minds between any of the Defendants. Instead his claim essentially speculates that because he had a clean blood test, there must have been a conspiracy against him and then attempts to fit the evidence into that narrative. Plaintiff points to evidence that Officers Domino and Jessen thought Plaintiff's behavior was rude, and several of the officers called him insulting names when

discussing their impressions of him. He concludes that these facts show that the officers intended to arrest him regardless of whether the facts supported suspicion he was driving while impaired. But because his traffic stop and investigatory detention were supported by reasonable suspicion and his arrest was supported by probable cause, Defendants' subjective feelings about Plaintiff are irrelevant. *See Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1390 (8th Cir. 1986) ("If there was probable cause to arrest Hannah, based on an objective reasonableness standard, the subjective motivations of the arresting police officers are irrelevant.").

Plaintiff also alleges that Trooper Erickson must have been involved in the conspiracy for several reasons. He asserts, for instance, that after Trooper Erickson and Officer Jessen stepped out of the sight and audio range of the recording in the Medina Police Station, Trooper Erickson's facial expressions suggested that "the fix was in." (Pl. Dep. 149:12–18.) And he asserts that Trooper Erickson falsified his report because he told Officer Domino that he was going to "call" Plaintiff's condition a central nervous system depressant and stimulant, rather than stating that he "found" or "concluded" that was the case. But looking at all the evidence in the record, and in the light most favorable to Plaintiff, the inference of a conspiracy Plaintiff seeks is simply not reasonable.

For the foregoing reasons, Defendants motions for summary judgment should be granted and Count II of Plaintiff's First Amended Complaint should be dismissed with prejudice.

**D.      Plaintiff Failed to Sue Officers Domino or Jessen in Their Individual Capacities**

**1.      Plaintiff did not plead an individual capacity claim against Officers Domino or Jessen**

As an alternative argument that Plaintiff's § 1983 claims should be dismissed against them, Officers Domino and Jessen argue that Plaintiff has failed to assert individual-capacity claims against them.  Officers Domino and Jessen contend that Plaintiff's lawsuit is really one against the government entity for which they work, the City of Medina, because Plaintiff does not specify that he is suing them in their individual capacities anywhere in the original Complaint or in the First Amended Complaint.  The Eighth Circuit Court of Appeals and the courts of this District have repeatedly clarified that a plaintiff wishing to assert a claim for damages against a public official in his personal capacity under § 1983 must specifically state as much in his pleadings.  *See*, *e.g.*, *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *Lopez-Buric v. Notch*, 168 F. Supp. 2d 1046, 1050 (D. Minn. 2001).

This is not an onerous requirement.  It is also one that should have been clear to Plaintiff when the District Court dismissed his initial Complaint against Trooper Erickson for failure to plead an individual-capacity claim.  In United State District Court Judge John R. Tunheim's Order of dismissal, which was issued before Plaintiff filed his motion for leave to file his First Amended Complaint, Plaintiff was specifically alerted to this pleading requirement.  (*See* Doc. No. 20.)  As Judge Tunheim articulated, Plaintiff's suit against a government official was considered a suit against the State of Minnesota because Plaintiff failed to specify that he wished to sue Trooper Erickson in his

individual capacity. (*Id.*) When Plaintiff filed his First Amended Complaint, he did not name Officers Domino and Jessen in their individual capacities. Plaintiff argues that he has sued Officer Domino and Jessen in their individual capacities by using the officers' names in the caption of his First Amended Complaint. But, referencing an officer's name in the caption does not satisfy the requirement to indicate expressly and unambiguously the intent to sue a government official individually. *See Baker v. Chisom*, 501 F.3d 920, 923–25 (8th Cir. 2007).

Nowhere in the First Amended Complaint does Plaintiff specifically state that he is suing these Defendants in their individual capacities. That omission entitles Officers Domino and Jessen to judgment as a matter of law on Plaintiff's § 1983 claims in Counts I and II of the First Amended Complaint.

### 2. Plaintiff has presented no evidence to support a *Monell* Claim Against the City of Medina

Plaintiff has failed to sue Officers Domino and Jessen in their individual capacities. He has, instead, sued them in their official capacities. *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998). Therefore, Plaintiff has only sued the public entity that employs Officers Domino and Jessen, the City of Medina. *See Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994). To show that a public entity, such as the City of Medina has violated Plaintiff's constitutional rights, he must present evidence that the City's policies or customs were the moving force behind a constitutional violation. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Plaintiff has pointed to no evidence in the record that a policy or

custom of the City of Medina violates federal law. Nor has he pointed to any evidence that a facially valid City of Medina policy or custom was adopted by deliberate indifference to obvious consequences that violate federal law. *See Moyle v. Anderson*, 571 F.3d 814, 817–18 (8th Cir. 2009). Also, as set forth above, there has been no constitutional violation. Thus, Plaintiff's official capacity claims under § 1983 in Counts I and II of the First Amended Complaint should also be dismissed with prejudice.

### E. Exercising Jurisdiction Over Plaintiff's State Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over a supplemental state law claim if the district court has dismissed all claims over which it has original jurisdiction. Accordingly, because this Court has determined that Plaintiff's claims under § 1983 should be dismissed with prejudice, the question arises whether the Court should continue to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. In resolving that question, courts in this District consider the following factors: (1) judicial economy; (2) comity; (3) fairness; and (4) convenience. *Farris v. Exotic Rubber and Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. 2001) (declining to exercise supplemental jurisdiction over state law claims where all federal question claims were dismissed on summary judgment). The Supreme Court has noted that "[supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). But, if the court "has invested 'considerable resources' in the action[] by the time that the Federal claims are dismissed, the Court

would not abuse its discretion in denying a remand." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1051 (D. Minn. 2003) (denying motion for remand of supplemental state law claims where the federal proceedings had progressed to a few months before the trial-ready date and where the district court had expended considerable resources in addressing several motions filed by the parties).

Here, the Court has expended significant resources in addressing the motions filed by the parties to date, including a prior motion to dismiss and to amend the initial Complaint. The parties have engaged in significant discovery and preparation of this case. The trial-ready date is November 1, 2012, which is less than one month away. This is not a case in which judicial economy militates in favor of remanding the state law claims because, as described more fully below, Plaintiff's state law claims are inextricably linked to the dismissed federal claims. *See Besett v. Hegg*, Civ. No. 10-0934 (JRT/LIB), 2012 WL 3568812, at *3 (D. Minn. Aug. 17, 2012) (deciding to exercise supplemental jurisdiction over remaining state law claims where court expended resources in earlier dispositive motions and in light of developed stage of proceedings); *cf. Rothmeier v. Inv. Advisers, Inc.*, 932 F. Supp. 1156, 1161–62 (D. Minn. 1996) (declining to exercise supplemental jurisdiction over remaining state law claims that were "not inextricably linked to the dismissed [federal] claims"). Thus, this Court recommends exercising the Court's discretion to retain jurisdiction over Plaintiff's supplemental state law claims.

**F.     Plaintiff's State Law Claims**[6]

**1.     False Imprisonment**

In Count III of his First Amended Complaint, Plaintiff asserts a claim for false imprisonment against all Defendants based on the same events as his § 1983 claims.  The tort of false imprisonment under Minnesota law requires an unlawful arrest performed by

---

[6]     Trooper Erickson argues that Plaintiff's state law claims against him are barred by the applicable two-year statute of limitations found in Minn. Stat. § 541.07.  Plaintiff argues that the allegations in the First Amended Complaint relate back to the date of his original pleading under Federal Rule of Civil Procedure 15(c) and that Trooper Erickson had notice of the action well before the expiration of the limitations period.

Rule 15(c) allows relation back of an amended pleading naming a new defendant where the new defendant had notice of the suit within the limitations period and the new defendant knew or should have known that the action would have been brought against him initially had there not been a mistake concerning his identity as the proper party.  *See* Fed. R. 15(c)(1)(C)(ii).  Here, although Trooper Erickson likely had notice of the action at the time the Complaint was originally served, and it does not appear that he would be prejudiced in defending on the merits, Plaintiff has not shown that his failure to name Trooper Erickson in his individual capacity earlier was a "mistake concerning the proper party's identity."  *See* Fed. R. Civ. P. 15(c)(1)(C)(ii).  Plaintiff knew Trooper Erickson was involved all along but made a legal error or mistaken judgment about suing him in his individual capacity at the outset.  Several courts have held that such a legal error or mistaken judgment does not permit relation back under Rule 15(c).  *See Lovelace v. O'Hara*, 985 F.2d 847, 850–51 (6th Cir. 1993) (prohibiting relation back of an amended pleading where a plaintiff originally sued a government officer in his official capacity and later added the officer as a defendant in his individual capacity); *Colvin v. McDougall*, 62 F.3d 1316, 1318–19 (11th Cir. 1995) (same); *Smith v. Paladino*, 317 F. Supp. 2d 884, 888 (W.D. Ark. 2004) (noting that a "mistaken legal judgment" concerning the proper party to sue in a personal capacity is not the same as a mistake concerning the identity of the proper defendant under Rule 15(c) and citing *Shea v. Esensten*, 208 F.3d 712 (8th Cir. 2000)); *but see Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996) (allowing relation back under Rule 15(c)'s provision concerning misapprehension of a proper party's identity where plaintiff made a legal mistake by originally failing to sue individual officers in a § 1983 complaint).  Accordingly, Plaintiff's state law claims against Trooper Erickson should be dismissed as time-barred.  This Court will, nevertheless, address the merits of Plaintiff's state law claims against Trooper Erickson for purposes of this Report and Recommendation.

the defendant, which is an arrest made without probable cause, and any confinement subsequent to such an unlawful arrest is false imprisonment. *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1016 (D. Minn. 1998) (citing *Perkins v. St. Louis Cnty.*, 397 N.W.2d 405, 408 (Minn. Ct. App. 1986), and *Lundeen v. Renteria*, 302 Minn. 142, 224 N.W.2d 132, 136 (Minn. 1974)). However, "[i]f probable cause to arrest exists, the subsequent arrest is lawful and there is no cause of action for false arrest or false imprisonment." *Johnson v. Morris*, 453 N.W.2d 31, 36 (Minn. 1990).

Because there is no genuine dispute regarding probable cause to arrest Plaintiff, which entitles Defendants to judgment as a matter of law on Plaintiff's § 1983 claims, Plaintiff's false imprisonment claim in Count III of his First Amended Complaint should be dismissed as well. *See Johnson*, 453 N.W.2d at 40 (concluding that the absence of a fact dispute on a § 1983 false-arrest claim entitles a defendant to summary judgment dismissing state tort claims for false imprisonment when the state claims parallel the § 1983 claims).

### 2. Assault and Battery

In Count IV of his First Amended Complaint, Plaintiff's asserts an assault and battery claim against all Defendants. He bases these claims on Defendants' "handcuffing Plaintiff and confining Plaintiff in a vehicle with handcuffs while driving him around in a manner intended to cause bodily harm and fear of bodily harm." (Doc. No. 42, First Am. Compl. ¶ 68.) Plaintiff also claims that the use of a blood draw to determine whether he was under the influence of drugs constitutes an assault and battery.

Under Minnesota law, "[a]n assault is a threat to do bodily harm to another with the present ability to carry out the threat." *Adewale*, 21 F. Supp. 2d at 1016 (citing *Dahlin v. Fraser*, 206 Minn. 476, 288 N.W. 851 (Minn. 1939)). In his deposition, Plaintiff admitted that Trooper Erickson did not threaten him physically. (Pl. Dep. 144:6–8.) Trooper Erickson is entitled to judgment as a matter of law on Plaintiff's assault claim. With respect to Officers Jessen and Domino, in his affidavit, Plaintiff says that he was "subjected to verbal threats and screaming" from Officer Jessen (Pl. Aff. ¶ 11); however, he does not identify a single threat to do him bodily harm.[7] Further, neither in Plaintiff's affidavit nor in the other evidence presented in opposition to Defendants' motions does Plaintiff identify any evidence that Officer Domino threatened to do bodily harm to him. Accordingly, Officers Domino and Jessen are entitled to judgment as a matter of law on Plaintiff's assault claim as well.

Plaintiff's battery claim should also be dismissed. "A battery is an intentional, unpermitted, offensive contact with another. *Adewale*, 21 F. Supp. 2d at 1016 (citing *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980)). "Police officers may come into contact with individuals for legitimate purposes; thus, the use of force by an officer must be excessive to constitute battery." *Id.* (citing *Johnson v. Peterson*, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984)).

---

[7]     Plaintiff testified that he felt threatened because there were several officers at the site of the traffic stop and he did not know whether they were going to "beat the hell" out of him. (Pl. Dep. 61:16–62:8.) Although he claims to have felt threatened, he does not point to conduct of any officer at the scene that a reasonable juror could believe constituted a threat to do bodily harm.

Plaintiff claims that he suffered a battery as a result of handcuffs being applied too tightly to his wrists. The Minnesota Supreme Court has held that minor bruising as a result of the application of handcuffs used by an officer during a lawful arrest is insufficient evidence to support an "'excessive force' battery claim." *Johnson v. Morris*, 453 N.W.2d 31, 40–41 (Minn. 1990). Plaintiff testified that the handcuffs only caused him temporary discomfort and left a red ring around his left wrist. He has no lasting injuries as a result of being handcuffed. (Pl. Dep. 70:7–24 (admitting that his wrist causes him no problems today).) Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's battery claim based on handcuffing.

Similarly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that they committed battery by subjecting him to a blood draw. Under Minnesota law, anyone driving a motor vehicle in Minnesota consents to a chemical test of the person's blood, breath, or urine to determine the presence of alcohol, controlled substances, or hazardous substances. Minn. Stat. § 169A.51, subd. 1(a). An officer can require a person to take such a test if the officer has probable cause to believe that an individual was driving while impaired, and the person has been lawfully arrested. *Id.* § 169A.51, subd. 1(b). Because there was probable cause to suspect Plaintiff was driving while impaired, because Plaintiff was lawfully arrested, and because such tests are consensual as a matter of Minnesota law, Plaintiff cannot show that he suffered an "unpermitted" contact by Defendants.

For the foregoing reasons, this Court recommends that Count IV of Plaintiff's First Amended Complaint asserting a claim for assault and battery be dismissed with prejudice.

### 3. Defamation

In Count V of his First Amended Complaint, Plaintiff asserts a claim for defamation. For a plaintiff to prevail on a common law defamation claim under Minnesota law, he must plead and prove that the defendant made a false statement, which he communicated to someone other than the plaintiff, and that statement must tend to harm the plaintiff's reputation and to lower him in the estimation of the community. *El-Ghazzawy v. Berthiaume*, 708 F. Supp. 2d 874, 885 (D. Minn. 2010) (citing *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)).

### a. No reasonable juror could conclude that Trooper Erickson defamed Plaintiff

Although Plaintiff's memorandum and his First Amended Complaint do not specify the defamatory statements he attributes to Trooper Erickson, Plaintiff testified in his deposition that Erickson defamed him when he "wrote a report saying that [Plaintiff] was on CNS stimulants and depressants." (Pl. Dep. 170:10–13.) Plaintiff, however, admitted that he was not aware whether that report was ever distributed to anyone other than his counsel and the court. He claimed that the report was published in a newspaper, but he does not have a copy of the story, could not remember the name of the newspaper or where it was published, and stated that he "believe[s] [he] read it on the internet." (Pl. Dep. 170:22–171:16.) Based on this evidence, no reasonable juror could conclude that

Trooper Erickson was responsible for the publication of any defamatory statement to someone other than Plaintiff. Further, contrary to Plaintiff's assertion that Trooper Erickson made a false statement in his report by stating his opinion that Plaintiff was under the influence of a depressant and a stimulant, no reasonable jury could conclude that the information in that report was false.

Defendants have shown that the only information sent to the media regarding Plaintiff's arrest was in the Medina Police Department's Police Report for the week of September 12, 2009, through September 19, 2009. That report indicated only that Plaintiff was arrested for driving while impaired on September 12, 2009, a fact which Plaintiff admits is not false by his own allegations in this case. For each of these separate reasons, Trooper Erickson is entitled to judgment as a matter of law. Plaintiff's defamation claim and Count V of the First Amended Complaint should be dismissed against him.

### b. No reasonable juror could conclude that Officers Domino and Jessen defamed Plaintiff

In his First Amended Complaint, Plaintiff points to the following statements as defamatory: (1) that Officer Domino falsely stated that he was swearing at her during the traffic stop; (2) that the police reports contain lies because he was not, in fact, impaired on the night of the incident; and (3) that the fact that he was arrested was disseminated to the media and published in police blotters.

Defendants Domino and Jessen argue that they are entitled to judgment as a matter of law on the first statement because it was absolutely privileged. Plaintiff has presented

evidence that Officer Domino testified at a trial concerning Plaintiff's charge for speeding that he was swearing during the course of the traffic stop. (*See* Hansen Aff. ¶ 3, Ex. 1.) Plaintiff asserts that this statement was demonstrably false and cites to Officer Domino's alleged acknowledgement that Mr. Hanson was smart enough not to swear at her as evidence that she was lying during the judicial proceeding. The statement Plaintiff attempts to attribute to Officer Domino, however, was actually made by Trooper Erickson. Plaintiff has, as a result, failed to adduce evidence to establish a genuine fact dispute with respect to whether Officer Domino was lying on the stand.

More importantly, even if Officer Domino's testimony at the trial were false and defamatory, such statements are protected by absolute privilege if made by a witness during a judicial proceeding where the statement at issue is relevant to the subject matter of the litigation. *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007). Officer Domino's statements on the stand at the trial fall directly within this rule, and therefore she is entitled to judgment as a matter of law on Plaintiff's defamation claim.

Officers Domino and Jessen are also entitled to summary judgment on Plaintiff's claims that he was defamed as a result of allegedly false information contained in their police reports. The statements in their reports are absolutely privileged from liability for defamation based on the content of those reports. Under *State v. Carradine*, Minnesota grants absolute immunity to a police officer for allegedly defamatory statements made in an arrest report, and in any intradepartmental statements made in the course of the officer's duties. 511 N.W.2d at 736 & n.2. And although *Carradine* stopped short of establishing a *per se* rule that a police officer has an absolute privilege from liability for

statements made to the press that are exact or substantial repetitions of statements made in an arrest report, *id.* at 737, here, there is no material dispute that the Medina Police Department Police Report for the week of September 12, 2009, merely communicated the fact that Plaintiff had been arrested for driving while impaired. Plaintiff cannot present any evidence that such a statement was false.

For all these reasons, Defendants are entitled to judgment as a matter of law on all Plaintiff's defamation claims, and Count V of the First Amended Complaint should be dismissed with prejudice.

## IV. DOE DEFENDANTS

This Court notes that Plaintiff has named "John Doe, and Mary Roe 1 through 4" as Defendants in this action. In the Eighth Circuit, "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). When no specific involvement is pled against the unknown defendants, and when their involvement is not discovered in response to a defendant's motion for summary judgment, dismissal of the claims against those unidentified parties is appropriate. *See Phelps v. United States Fed. Gov't*, 15 F.3d 735, 739 (8th Cir. 1994). Here, Plaintiff has not pled any specific involvement or presented any evidence or argument relating to these Doe and Roe Defendants and, accordingly, all his claims against them should be dismissed with prejudice.

# V.     RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.      Defendant Chris Erickson's Motion for Summary Judgment (Doc. No. 54)

be **GRANTED**;

2.      Defendants Charmane Domino and Jeremiah Jessen's Motion for Summary

Judgment (Doc. No. 58) be **GRANTED**; and

3.      This action be **DISMISSED WITH PREJUDICE**.


Date:   October 22, 2012

                                                               _s/ Tony N. Leung_____
                                                               Tony N. Leung
                                                               United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 5, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.