# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KARL HANSON, | Civil No. 10-3895 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| CHARMANE DOMINO; JEREMIAH JESSEN; CHRIS ERICKSON *in his individual capacity;* JOHN DOE and MARY ROE 1 through 5. | |
| Defendants. | |

Nathan M. Hansen, Attorney at Law, 2440 North Charles Street, Suite 224, North St. Paul, MN  55109, for plaintiff.

Daniel P. Kurtz and William J. Everett, **EVERETT & VANDERWIEL, PLLP**, 100 Center Drive, Buffalo, MN  55313, and Pamela L. VanderWiel, **EVERETT & VANDERWIEL, PLLP**, 2930 146th Street West, Suite 115, Rosemount, MN  55068, for defendants Charmane Domino and Jeremiah Jessen.

Marsha Eldot Devine, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN  55101, for defendant Chris Erickson.

Plaintiff Karl Hanson's claims arise from a traffic stop, arrest, and night in jail on suspicion of driving under the influence.  Hanson brings a false arrest claim and a conspiracy claim pursuant to 42 U.S.C. § 1983, and he brings claims for false imprisonment, assault, battery, and defamation under state law.  Currently before the Court are Hanson's objections, (Pl.'s Objection ("Objections"), Nov. 5, 2012, Docket

No. 76.), to a Report and Recommendation of United States Magistrate Judge Tony N. Leung that recommended granting defendants' motions for summary judgment (one by Charmane Domino and Jeremiah Jessen and another by Chris Erickson) in their entirety. (Report and Recommendation ("R&R"), Oct. 22, 2012, Docket No. 75.)   Having conducted a *de novo* review of the portions of the R&R to which Hanson objects, the Court will overrule Hanson's objections and adopt the R&R.

**BACKGROUND**

**I.     BRIEF SUMMARY OF FACTS**

The R&R thoroughly presented the facts.   (R&R at 2-10.)   The Court will summarize them briefly here and then focus below on the facts that Hanson contends were misrepresented or underemphasized in the R&R.

It is undisputed that Domino stopped Hanson's vehicle for speeding at approximately 8:20 p.m. on September 12, 2009.  (Aff. of Daniel P. Kurtz, Ex. C (Dep. of Charmane Domino ("Domino Dep.")) 58:2-12, July 9, 2012, Docket No. 61.)  Based on Hanson's behavior during the stop, Domino became suspicious that he was under the influence of alcohol or some other substance and contacted Jessen, who was working an overtime shift as part of a driving under the influence prevention program.  (*Id.* 70; Kurtz Aff. Ex. E (Dep. of Jeremiah Jessen ("Jessen Dep.") 32:5-10.)  Jessen observed similarly suspicious behavior and ordered Hanson out of his vehicle for sobriety tests.  (Jessen Dep. 34:2-10.)  During certain sobriety tests, including a walk-and-turn test and a one-legged-stand test, Jessen observed several indications that Hanson was impaired.  (*Id.* 80-83.)  Some of these indications are apparent in the video taken from Domino's dashboard,

such as Hanson losing his balance and catching himself on the side of his vehicle.  (Kurtz Aff., Ex. A ("Dashboard Video") 20:33-34.)  During his investigation of Hanson, Jessen also examined Hanson's tongue for signs of ingestion of drugs.  (Jessen Dep. 70, 81.)  Jessen testified that he observed raised bumps on the back of Hanson's tongue.  (*Id.* 81:13-16.)   Jessen then placed Hanson under arrest, handcuffed him, placed him in Jessen's squad car, and transported him to the Medina Police Station, where he had arranged for Erickson to conduct a drug recognition evaluation ("DRE").  (Video 20:36; Jessen Dep. 85:13-25.)

Before conducting the DRE, Erickson had Hanson blow into a machine called an "Alco-Senser," and the results indicated that Hanson had no alcohol in his blood.  (Kurtz Aff. Ex. G (Dep. of Chris Erickson ("Erickson Dep.")) 29:11-18.)  Then, after a series of questions, physical evaluations, and tests, Erickson concluded that Hanson was under the influence of a "Central Nervous System Depressant and a stimulant."  (Kurtz Aff., Ex. J ("DRE Report").)

Jessen next brought Hanson to Methodist Hospital for a blood draw.  (Kurtz Aff., Ex. D ("Police Report") at 4.)  After the blood draw, Jessen took Hanson to the Hennepin County Jail "where he was booked on probable cause of 3rd Degree DUI."  (*Id.* at 4.)  The results of the blood draw eventually came back negative, meaning that no alcohol or commonly used drugs were detected.  (*Id.* at 7.)  Hanson spent the night in jail, but was charged only with speeding, not DUI, because of the results of the blood draw.  (Kurtz Aff., Ex. O (Tr. of Speeding Trial) at 19.)

## II.      THE R&R

The R&R recommended granting defendants' motions for summary judgment in their entirety.  As to Hanson's federal claims, the R&R first recommended granting summary judgment on Hanson's 42 U.S.C. § 1983 false arrest claim because a reasonable factfinder would have to conclude that Domino's initial stop was supported by probable cause; Domino's investigative detention was supported by reasonable articulable suspicion; Jessen's investigative detention was supported by reasonable articulable suspicion; Jessen's arrest was supported by probable cause;[1] and Erickson had probable cause to conduct the DRE.  (R&R at 11-18.)  Second, the R&R recommended granting summary judgment on Hanson's 42 U.S.C. § 1983 conspiracy claim because the R&R had already found that no constitutional violation occurred and because Hanson did not produce evidence from which a reasonable factfinder could infer that the defendants conspired to falsely arrest Hanson.  (*Id.* at 18-20.)[2]

As to Hanson's state law claims, the R&R first recommended that the Court exercise supplemental jurisdiction even if the federal claims are dismissed because the claims are "inextricably linked" and the Court will have "expended significant resources"

---

[1] The R&R also found, in the alternative, that Jessen would be entitled to qualified immunity.  (R&R at 17 n.5.)  Hanson's objections do not explicitly address this finding.

[2] Additionally, the R&R found, in the alternative, that summary judgment would be appropriate as to both § 1983 claims against Domino and Jessen because Hanson failed to specifically state in his pleadings that he was asserting a claim against them in their individual capacities.  (R&R at 21-22.)  The R&R then found that Hanson had not produced evidence that would support a finding that the City of Medina violated his constitutional rights.  (*Id.* at 22-23.)  Hanson's objections do not address these portions of the R&R.

addressing the claims.³  (*Id.* at 23-24.)  The R&R recommended granting summary judgment on Hanson's false imprisonment claim because the arrest was supported by probable cause.  (*Id.* at 25-26.)  The R&R recommended granting summary judgment on Hanson's assault claim because Hanson did not identify a threat to do bodily harm and Hanson's battery claim because the temporary discomfort from handcuffing was insufficient to support a claim and because the blood draw was supported by probable cause.  (*Id.* at 26-29.)  Finally, the R&R addressed Hanson's defamation claims.  It first recommended granting summary judgment on Hanson's defamation claim against Erickson because he did not produce sufficient evidence that Erickson published the DRE Report.  (*Id.* at 29-30.)  Second, the R&R found that the publication of the weekly police report was not defamatory because it was true that Hanson was arrested for driving while impaired.  (*Id.* at 30.)  Third, the R&R found that Hanson had not identified any false statement in Domino's testimony at his speeding trial, and that such a statement would be subject to absolute privilege even if it were false.  (*Id.* at 30-31.)  Fourth, the R&R found that any statements in the police reports were absolutely privileged under Minnesota law.  (*Id.* at 31-32.)⁴  Hanson's objections make no explicit reference to his state law claims.

---

³ In addition to rejecting the state law claims against Erickson on their merits, the R&R found that they were untimely because the amended complaint was filed outside of the two-year statutory period and did not relate back to the initial complaint.  (R&R at 25 n.6.)  Hanson's objections do not address this portion of the R&R.

⁴ Lastly, the R&R recommended granting summary judgment on any claim Hanson might have against the unnamed defendants because he did not plead to any specific involvement or present any evidence relating to the Doe and Roe defendants.  (R&R at 32.)  Hanson's objections do not address this portion of the R&R.

## ANALYSIS

### I.    STANDARD OF REVIEW

Upon the filing of a Report and Recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Here, Hanson objects to the Magistrate Judge recommending that the Court grant defendants' motions for summary judgment.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    HANSON'S OBJECTIONS[5]

Hanson's overarching objection to the R&R is that it misstated and underemphasized facts tending to show that the defendants "were lying about any initial probable cause to continue the arrest of Mr. Hanson . . . and intended to incarcerate Mr. Hanson, despite the fact that he was not impaired." (Objections ¶ 19.) The Court will address Hanson's specific objections in turn and will find that the R&R appropriately considered Hanson's allegations and the evidence in reaching its conclusion that no reasonable factfinder could find in Hanson's favor on any of his claims.

### A.    The Initial Suspicion that Hanson Was Impaired

Hanson makes a number of arguments that appear to challenge the R&R's finding that no reasonable factfinder could find that Domino and Jessen's extension of the simple traffic stop was not supported by "'reasonabl[e] articulable suspicion for believing that criminal activity [is] afoot.'" (R&R at 12 (quoting *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007)).)

With respect to Domino, Hanson objects to the R&R stating that he "refused" to make eye contact with Domino, (R&R at 3, 12), because he was never ordered to show his eyes to Domino. (Objections ¶ 1.) He also questions Domino's perception that he was unable to multitask, (R&R at 3, 12), because she did not specifically explain her

---

[5] Hanson includes very little legal argument in his objections, making it somewhat difficult for the Court to discern which of the R&R's many findings Hanson challenges with each objection. The Court has attempted to separate the objections into categories and explain their potential legal significance.

perception at her deposition and because he had been water skiing at a high level earlier in the evening, which purportedly demonstrates that he "clearly was able to multi-task." (Objections ¶ 3.)  Hanson further objects that his decision not to answer questions cannot be used an indicator of impairment without violating his right to remain silent.  (*See* R&R at 12; Objections ¶ 2.)[6]

With respect to Jessen, Hanson asserts that the video evidence contradicts Jessen's statement that Hanson "would not look at him or speak directly to him in response to his questions."  (R&R at 4, 15; Objections ¶ 4.)  Hanson also claims that Jessen never asked him how much he had to drink, a dispute that the R&R noted.  (*See* R&R at 4; Objections ¶ 5.)  Additionally, Hanson argues that no record evidence supports Jessen's claim that Hanson's eyes were "constricted, red, and watery."  (R&R at 4; Objections ¶ 6.)

The Court finds Hanson's objections unavailing.  Considering the "totality of the circumstances," the Court finds that no reasonable jury could find that Domino or Jessen lacked the required reasonable articulable suspicion to expand the scope of Hanson's stop.  *United States v. Morgan*, 270 F.3d 625, 631 (8th Cir. 2001).  "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *Lyons*, 486 F.3d at 371.

The dashboard video shows that Hanson took an unusually long time to locate his driver's license and his insurance information.  While Hanson did not avoid eye contact

---

[6] This objection applies to Jessen as well.

with Domino and Jessen entirely, the video corroborates the officers' testimony that Hanson tended not to make eye contact with them while responding to their questions. Neither the fact that he was never explicitly asked to make more eye contact, nor the fact that he did make some eye contact, undermine the officers' objective perceptions of Hanson's behavior.  Domino also testified that Hanson struggled to multitask while he searched for his things and she questioned him.[7]  Jessen testified that Hanson's eyes were red, watery, and constricted.[8]  Thus, even considering the facts in the light most favorable to the plaintiff, as the Court is required to do at this stage,[9] the Court finds that no reasonable jury could find that Domino or Jessen lacked a "minimal, objective justification" for continuing their investigation.[10]

---

[7] The fact that Hanson may have successfully multitasked earlier in the day while waterskiing, before his encounter with the officers, is irrelevant to whether the officers possessed the required level of suspicion based on "the totality of the circumstances surrounding the stop." *United States v. Dixon*, 51 F.3d 1376, 1381 (8th Cir. 1995).  Additionally, because the Court considers the totality of the circumstances to determine whether an officer had reasonable suspicion, there is nothing improper about the officers considering Hanson's defiance and reluctance to answer certain questions as an indicator that further investigation might be warranted.

[8] The lack of photographs corroborating Jessen's observation does not undermine the credibility of the observation.

[9] *See, e.g.*, *Small v. McCrystal*, __ F.3d __, 2013 WL 599567, at *1 (8th Cir. Feb. 19, 2013) ("This court states the facts most favorably to the plaintiffs, discounting the deputies' contrary evidence.").

[10] The R&R found that Hanson's expert report, which opined that the officers lacked reasonable suspicion to extend Hanson's stop, failed to create a genuine issue of material fact because it offered and improper legal conclusion and because it was unsworn. (R&R at 13-14 & n.2.)  Hanson's objections do not address this portion of the R&R.

**B.  Jessen's Decision to Arrest Hanson and Hold Him Overnight**

Hanson makes a series of objections that appear to relate to his claim that Jessen's behavior amounted to a false arrest, which the R&R rejected.  (*See* R&R at 17 ("Plaintiff has not submitted any evidence that creates a genuine dispute about any of these facts, all of which are material to the issue of probable cause." (footnote omitted)).)

Hanson points to several apparent contradictions in the evidence that he believes demonstrate that Jessen falsely concocted justifications for arresting him.  For example, Hanson points to Jessen's statement that he was arresting Hanson for driving under the influence, as opposed to drinking and driving, which was followed by Jessen asking Hanson about the black spots on his tongue.  (*Id.* ¶ 8.)  Hanson believes this sequence somehow proves that the black spots Jessen claims to have observed on Hanson's tongue were the only basis for the arrest at the time of the arrest.  (*Id.* ¶ 8.)  Hanson also argues that Jessen must not have truly suspected that Hanson was under the influence of a substance other than alcohol because Jessen allegedly told Hanson at one point that he would let Hanson go if he took a preliminary breath test.  (*Id.* ¶ 9.)  Hanson claims that Jessen told him he would be let go if Erickson found that Hanson was not impaired, but also told Hanson that he was "going downtown regardless," which are potentially inconsistent positions.  (*Id.* ¶ 11.)  Lastly, Hanson claims that Jessen lied by saying that

the Hennepin County Jail was the most convenient place for him to be held and that the

department's procedure dictated holding him there.  (*Id.* ¶ 18.)[11]

The Court finds this set of objections unavailing as well.  In order to comply with

the Fourth Amendment, Jessen's warrantless arrest of Hanson must have been supported

by probable cause.  *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000).  "Probable

cause exists if the totality of facts based on reasonably trustworthy information would

justify a prudent person in believing the individual arrested had committed an offense at

the time of the arrest."  *Id.* (internal quotation marks omitted).  Crucially, "[i]f there [i]s

probable cause to arrest [the plaintiff], based on an objective reasonableness standard, the

subjective motivations of the arresting police officers are irrelevant."  *Hannah v. City of

Overland, Mo.*, 795 F.2d 1385, 1390 (8th Cir. 1986).

Here, in addition to the factors that led to Jessen's initial suspicion, Jessen noted

several more objective indicia of impairment while conducting sobriety tests such as the

horizontal-gaze-nystagmus test, the walk-and-turn test, and the heel-to-toe walking test.

The video unambiguously shows Hanson having noticeable difficulty balancing on more

than one occasion during the sobriety tests.  The Court finds, on the basis of the objective

evidence, that even if Jessen was incorrect about Hanson driving under the influence,

Jessen's mistake was objectively reasonable and he is entitled to qualified immunity.

---

[11] Hanson also objects to the R&R stating that he initially refused to participate in sobriety tests, (*id.* at 4), because the video shows that Hanson began participating in sobriety tests and stopped "when Jessen began his humiliation of [Hanson] by telling him to stick his fully projected tongue out yet further," (Objections ¶ 7.)  The Court finds this factual discrepancy immaterial to the question at hand, which is whether Jessen had probable cause to arrest Hanson based on Jessen's observations during the stop and the sobriety tests.

(*See* R&R at 17 n.5; *see also Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (holding that officers are entitled to qualified immunity if they arrest a suspect while under the objectively reasonable mistaken belief that probable cause exists); *United States v. Barry*, 98 F.3d 373, 377 (8th Cir. 1996) (holding that probable cause existed where a suspect drove erratically, admitted he had been drinking, and failed multiple sobriety tests). Hanson's objections largely explore Jessen's supposed subjective motivations, which cannot defeat the conclusion that the objective evidence was sufficient for Jessen to reasonably believe probable cause existed. *See Hannah*, 795 F.2d at 1390.

### C.    Objections Relating to Erickson and the Conspiracy Claim

Hanson's remaining objections appear to relate to the § 1983 conspiracy claim, which the R&R rejected both because it had already rejected the underlying claim and, in the alternative, because it found there was insufficient evidence that defendants conspired. (R&R at 18-20.) The objections also potentially relate to claims Hanson attempts to bring against Erickson individually, though those claims are undeveloped and fail for the reasons stated in the R&R. (*See* R&R at 18.)

Hanson argues that the R&R failed to recognize the significance of a series of conversations and events at the Medina Police Station, some of which were captured on video. Hanson claims that Jessen told Erickson that Hanson would spend the night in the Hennepin County Jail no matter what, which purportedly demonstrates that Erickson was complicit in the false arrest. (Objections ¶ 10.) Hanson focuses intently on a moment following the completion of the DRE where Erickson appears to gesture with his head to

Jessen, Erickson and Jessen then walk out of the camera's line of sight, and before they are out of the microphone's range Erickson can be heard asking whether they are still being recorded.  (*Id.* ¶ 14; Kurtz Aff., Ex. I ("Video Tr.") 51:14-19.)  The two return approximately ten minutes later and Erickson has testified that he does not recall what they discussed while they were off camera, which Hanson suggests is unbelievable and indicative of a conspiracy.  (Objections ¶ 14 ("Now who remembers nothing about a ten-minute conversation that they requested and had with a person to whom they first met?").)  Hanson emphasizes that shortly thereafter, Domino asks Erickson, "[s]o you didn't find anything with him?" and Erickson responds, "**Yeah**, no, I'm going to call . . . **what I'm going to call is** [central nervous system] depressants and stimulants." (Objections ¶¶ 15-16; Video Tr. 52:19-53:1 (emphases added).)[12]  Hanson characterizes Domino's question as an "admission that there were no signs of impairment" and Erickson's first response ("yeah") as an "unsuspecting statement" and the remainder of the statement as a "contrived statement for the camera."  (*Id.* ¶ 16.)  In addition to focusing on these conversations, Hanson notes that Erickson's handwritten DRE featured a correction under the "Oral Cavity" box where he initially may have started writing the word normal, but then wrote "bumps," which Hanson claims proves that Erickson intentionally corroborated Jessen's claim that he saw bumps on Hanson's tongue during the stop.  (Kurtz Aff., Ex. J at 2.)  With respect to Erickson's observations during the

---

[12] Hanson also asserts that the conversations described above "were initially withheld from [Hanson]," but provides no details regarding the alleged withholding of video evidence. (Objections ¶ 17.)

DRE, Hanson challenges Erickson's testimony that Hanson "could not make his eyes converge." (Objections ¶ 12.) Hanson claims that he is able to cross his eyes and "[g]iven the fact that the record shows that [Hanson] was not impaired, he clearly could cross his eyes on the evening in question, and he will be able to demonstrate his ability to do so to the jury." (*Id.*) Finally, with respect to Erickson's conclusions following the DRE, Hanson argues that Erickson must either be lying as part of conspiracy or be incompetent because he concluded that Hanson was under the influence of both stimulants and depressants, which Hanson believes is an impossible contradiction. (Objection ¶ 13.)

Having considered the objections, the Court finds that defendants are entitled to summary judgment on Hanson's § 1983 conspiracy claim. To establish a § 1983 conspiracy claim, Hanson must establish: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). Hanson must also "prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.* Although "conspiracies are by their nature usually clandestine [and] [i]t is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement," *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981), "[s]peculation and conjecture are not enough to prove a conspiracy exists," *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999).

Here, the conspiracy claim fails because Hanson has not successfully established an underlying deprivation of a constitutional right.  The Court overruled Hanson's objections relating to his constitutional claims against Domino and Jessen above.  Turning to Erickson, the Court finds that Erickson did not violate the Fourth Amendment by conducting the DRE or by concluding that Hanson was under the influence.  It was objectively reasonable for Erickson to drive to the Medina Police Station and conduct the DRE after Jessen contacted him and explained that he needed a DRE conducted on a person who was arrested for suspicion of driving under the influence.  And Erickson's conclusions were supported by objective evidence.  (*See* Erickson Dep. 84-85.)  Thus, the fact that Erickson's conclusions were not later confirmed by Hanson's blood sample does not establish that Erickson violated the Fourth Amendment.[13]  Therefore, Hanson has failed to establish an underlying constitutional violation by any defendant and his conspiracy claim must fail as well.[14]

---

[13] To the extent that Hanson attempts to bring a claim against Erickson for failure to prevent a constitutional violation, (*see* Compl. ¶ 29), the Court finds that it fails as well. Erickson's awareness that Jessen intended to take Hanson "downtown" regardless of the outcome of the DRE does not establish that Erickson knew a constitutional violation was occurring.  In fact, the reason Hanson was being taken downtown regardless of the outcome was that he failed to produce a urine sample and needed to be taken to a downtown hospital to have blood drawn. (Jessen Dep. 96:5-15, 135:4-8.)

[14] Additionally, the R&R explicitly considered many of the facts that Hanson highlights in his objections and nonetheless found that "the inference of a conspiracy [Hanson] seeks is simply not reasonable." (R&R at 20.)  The Court also finds that even if Hanson could establish a constitutional violation by one of the defendants, the evidence would not allow a reasonable factfinder to infer that defendants conspired to deprive Hanson of a constitutional right.

Having considered each of Hanson's objections and reviewed *de novo* the portions of the R&R that the objections potentially implicate, the Court will overrule the objections and adopt the R&R. Although the September 12, 2009 traffic stop and resulting arrest was unfortunate, nothing in the record of this case suggests to the Court that a Fourth Amendment violation or a conspiracy occurred. As a result, the case will be dismissed.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Hanson's objections [Docket No. 76] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 22, 2012 [Docket No. 75]. Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendant Chris Erickson's motion for summary judgment [Docket No. 54] is **GRANTED**.

2.    Defendants Charmane Domino and Jeremiah Jessen's motion for summary judgment [Docket No. 58] is **GRANTED**.

3.    This action is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   March 26, 2013
at Minneapolis, Minnesota.

                                   s/ John M. Tunheim
                                   JOHN R. TUNHEIM
                                   United States District Judge